01

02

03

04        UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
05                   AT SEATTLE

06  GARY C. TANNER,                    )     CASE NO.: C07-0713-JCC
                                       )
07          Plaintiff,                 )
                                       )
08      v.                             )     REPORT AND RECOMMENDATION
                                       )
09  DR. KENNEY, et al.,                )
                                       )
10          Defendants.                )
    _____ )

11

12                        INTRODUCTION

13          Plaintiff proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 action.  He is an

14  inmate incarcerated at the Monroe Correctional Complex (MCC) in Monroe, Washington.  In his

15  amended complaint, plaintiff avers violation of his constitutional rights through the denial of

16  treatment to address his chronic back pain, including a failure to take x-rays of his back, sporadic

17  and inadequate treatment, and denial of pain relief.  (Dkt. 18.)  Plaintiff names Superintendent

18  Kenneth Quinn, former Health Care Manager II Douglas Kollasch, David Kenney, M.D., and

19  Advanced Registered Nurse Practitioner Sheryl Allbert as defendants.[1]  He seeks declaratory,

20  injunctive, and monetary relief.

21  _____

22          [1] Three previously named defendants were dismissed from this matter.  (Dkts. 24 & 36.)

REPORT AND RECOMMENDATION
PAGE -1

01    Defendants moved for summary judgment (Dkt. 37) and plaintiff failed to respond.  The

02 Court deems plaintiff's failure to oppose the dispositive motion to be an admission that

03 defendant's motion has merit.   *See* Local Civil Rule 7(b)(2).   The Court further finds, having

04 considered the papers and pleadings submitted by defendants, as well as the balance of the record

05 in this matter, that defendant's motion for summary judgment should be granted and this case be

06 dismissed against all named defendants.

07                                            BACKGROUND

08    Plaintiff resides in the Special Offender Unit (SOU) at MCC.  (Dkt. 37, Ex. 2 (Allbert

09 Decl.), ¶ 3.)  The SOU houses offenders designated as seriously mentally ill.  (*Id*.)

10    Plaintiff suffered a variety of injuries prior to his incarceration, including injuries sustained

11 in two falls from trees during his career as a commercial tree trimmer and a fall off a cliff. (*Id*., Ex.

12 5 (Holland Decl.), Attach. A (Excerpts of Tanner Deposition) at 15-24, 41.)  Plaintiff also attests

13 to a variety of other injuries, health problems, and a long-standing history of mental illness.  (*Id*.

14 at 17, 24-26, 31-36, 41.)

15    During his incarceration in the DOC, plaintiff has received treatment for mental health

16 issues, chronic back pain, an ankle injury, asthma, high blood pressure, gastroesophageal reflux

17 disease, hypertriglyceridemia, and Type II diabetes.  (*Id*., Ex. 2 and Ex. 5, Attach. A.)  Defendant

18 Allbert has provided primary medical care for plaintiff since April 2005.  (*Id*., Ex. 2, ¶ 3.)

19    Until November 2007, defendant Kollasch served in a position of administrative oversight

20 of clinical delivery of medical care for inmates, including plaintiff.  (*Id*., Ex. 3 (Kollasch Decl.), ¶

21 2.)  Kollasch received and responded to four pieces of correspondence from plaintiff concerning

22 his medical care.  (*Id*., Ex. 3, ¶ 3 and Attachs. A-D.)  Prior to each response, Kollasch reviewed

REPORT AND RECOMMENDATION
PAGE -2

01 plaintiff's health care records and discussed the care provided with defendant Dr. Kenney, the then

02 Medical Director of MCC.   (*Id*., Ex. 3, ¶ 3 and Ex. 4 (Kenney Decl.), ¶ 1.)[2]

03         On July 10, 2006, Dr. Kenney examined plaintiff to evaluate his complaints of chronic low

04 back pain. (*Id*., Ex. 4, ¶ 2.) Dr. Kenney attests that plaintiff complained of back and ankle pain

05 and, on several occasions, stated that narcotic analgesics were the only type of medication that

06 was helpful. (*Id*.) Dr. Kenney further reports that, on examination, he found no muscle weakness

07 or atrophy in the lower limbs; no changes to soft or sharp touch, vibration, or position in the lower

08 extremities; minimal limitation of active rotation about the trunk and no limitation when the trunk

09 was actively moved; all other movements of the lumbar spine within normal limits; no exacerbation

10 of symptoms with movement; provocative tests, reliable in cases of significant disc disease

11 requiring surgical intervention, negative; and palpation of large muscle groups associated with

12 lumbar spine movement revealing muscle spasm and tenderness in several groups corresponding

13 to the origin of stated pain. (*Id*.)  (*See also id.*, Ex. 2, ¶ 8 (Allbert asserts that plaintiff is able to

14 carry out his activities of daily living without any problems and has a full range of motion in his

15 back).) Dr. Kenney determined that plaintiff demonstrated no significant degenerative disc disease

16 and found the cause of his back pain to be muscle spasm secondary to overall deconditioning.

17 (*Id*., Ex. 4, ¶ 3.) Dr. Kenney also concluded that plaintiff exhibited drug seeking behavior. (*Id*.)

18         Dr. Kenney recommended a treatment plan including a non-steroidal anti-inflammatory

19 (NSAID) to treat the inflammation caused by muscle spasm and an evaluation by a physical

20 therapist to assess plaintiff's needs and to teach him a daily exercise program. (*Id*., ¶ 6.) He found

21 

22         [2] Since October 2007, Dr. Kenney has served as Interim Health Care Manager II at MCC.
(Dkt. 37, Ex. 4, ¶ 1.)

REPORT AND RECOMMENDATION
PAGE -3

01   neither back surgery, nor a long-term course of narcotics indicated.  (*Id*., ¶¶ 8-9 and Ex. 2, ¶ 7.)

02   However, Dr. Kenney prescribed a short course of narcotics to be taken prior to the physical

03   therapy sessions and ordered ongoing evaluation and follow-up with Allbert to assess plaintiff's

04   ankle pain.  (*Id*., Ex. 4, ¶¶ 6, 9.)  Pursuant to Dr. Kenney's recommendations, plaintiff received

05   a full course of physical therapy, a hot water bottle, an extra blanket for comfort, a muscle relaxer,

06   Oxycodone before his physical therapy sessions, and Naproxen, a NSAID, for pain.  (*Id*., Ex. 2,

07   ¶ 6.)

08       Later, when plaintiff was not responsive to initial management, lumbar spine x-rays were

09   ordered to rule out another cause for his continued symptoms.  (*Id*., Ex. 4, ¶ 4.)  Dr. Kenney

10   attests that the x-rays revealed no degenerative changes or any other pathology.  (*Id*.)

11       Plaintiff also received treatment for his ankle, including x-rays after an ankle sprain injury,

12   physical therapy, and a brace.  (*Id*., Ex. 2, ¶ 9.)  Allbert attests that the X-rays were normal and

13   that plaintiff was found to have full range of motion in his foot and ankle, and to walk without a

14   limp.  (*Id*.)  However, MCC continues to provide a brace for support and comfort.  (*Id*.)

15       On September 26, 2007, Allbert took plaintiff's request for long-term narcotic analgesia

16   to the MCC Care Review Committee.  (*Id*., Ex. 2, ¶ 7.)  Based on the conclusion that narcotics

17   are not indicated for long-term treatment of chronic pain due to the high potential for physical and

18   psychological dependence, the request was deemed not medically necessary and denied.  (*Id*.)

19       Plaintiff continues to receive medications and treatment for his medical conditions.  In

20   particular, he receives blood pressure and blood sugar monitoring; a special diet; pulmonary

21   function testing; Metformin to manage diabetes; Albuteral for asthma; Benazepril for high blood

22   pressure; Hydrochlorothiazide, a diuretic; Robaxin, a muscle relaxer; Naproxen; and Simvastatin

REPORT AND RECOMMENDATION
PAGE -4

01  to prevent heart disease.  (*Id.*, Ex. 2, ¶ 5.)

02  <u>DISCUSSION</u>

03  Summary judgment is appropriate when "the pleadings, depositions, answers to

04  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

05  genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

06  of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving

07  party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

08  showing on an essential element of his case with respect to which he has the burden of proof.

09  *Celotex*, 477 U.S. at 322-23.  The court must draw all reasonable inferences in favor of the non-

10  moving party.  *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd*

11  *on other grounds,* 512 U.S. 79 (1994).

12  Plaintiff here avers claims pursuant to 42 U.S.C. § 1983.  In order to sustain a § 1983

13  claim, plaintiff must show (1) that he suffered a violation of rights protected by the Constitution

14  or created by federal statute, and (2) that the violation was proximately caused by a person acting

15  under color of state or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*,

16  947 F.2d 1418, 1420 (9th Cir. 1991).

17  Plaintiff alleges a violation of his Eighth Amendment rights.  As reflected above, he

18  specifically contends denial of treatment for his chronic back pain, including a failure to take x-rays

19  of his back, sporadic and inadequate treatment, and denial of pain relief.  However, for the reasons

20  described below, the undersigned finds plaintiff's claims subject to dismissal on summary

21  judgment.

22  / / /

REPORT AND RECOMMENDATION
PAGE -5

01  A.      Failure to Allege Personal Participation

02          To obtain § 1983 relief, plaintiff must show how individually named defendants caused

03  or personally participated in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d

04  1350, 1355 (9th Cir. 1981).  A plaintiff may not hold supervisory personnel liable under § 1983

05  for constitutional deprivations under a theory of supervisory liability.  *Taylor v. List*, 880 F.2d

06  1040, 1045 (9th Cir. 1989).  Rather, a plaintiff must allege that a defendant's own conduct

07  violated the plaintiff's civil rights.  Also, defendants acting in their official capacity are not

08  considered a "person" for purposes of a § 1983 damages claim.  *Arizonans for Official English*

09  *v. Arizona*, 520 U.S. 43, 69 n.24 (1997).

10          Defendants maintain that plaintiff improperly included defendants Quinn, Kollasch, and Dr.

11  Kenney in this lawsuit solely due to their supervisory and official capacities.  They point to

12  plaintiff's deposition testimony in support.  Plaintiff testified, with respect to these defendants:

13          Ken Quinn, yeah.  He's the superintendent or something.  I mentioned those people's
        names because I think they're the ones that hired Sheryl Albert.  That's the only
14      reason I mentioned Kollasch and Doug, Dough Kollasch and Kenney and Sherryl
        Albert is because I think Ken Quinn give him a job.  He should be responsible. . . .

15      . . .

16
        Well, yeah, I believe [Quinn] hired [Allbert] to do what she's doing, and she's
17      working under Ken Quinn and Kenney. . . .

18      . . .

19      Yeah, yeah.  That may be wrong.  They haven't done anything to me, but I did get a
        letter from Ken Quinn stating that he would change my health provider when me and
20      Sheryl were getting at it. . . .

21      . . .

22      Yeah, [Quinn] is more or less I think [included just because he was the boss]. . . .

REPORT AND RECOMMENDATION
PAGE -6

01    . . .

02    . . . I just wanted the people that I think is responsible for Sheryl Albert's acts. . . .

03    . . .

04    I believe [Kollash is listed because he's kind of a supervisory person, too].  I believe he's a medical supervisor or a medical manager . . . , and I think she's working under

05    one of these guys. . . .

06    . . .

07    I believe [Dr. Kenney's] the supervisor of Doug, and he tells Sheryl what to do.

08    . . .

09    Dr. Kenney tells Doug how it should be, and then they tell Sheryl Albert, hey, you can only do this . . . .

10

11    . . .

12    You know, I don't know [Dr. Kenney from Kollasch], okay?  I don't.  I don't know one from the other, but I know they're both high up there in rank as far as medical procedures go.  And so I'm getting them both.  I'm putting them both in a grievance.

13    I mean, I've wrote plenty of grievances, but they're way past the third level, you know.

14

15    (Dkt. 37, Ex. 5, Attach. A at 54-57, 70, 75.)  Defendants argue that, given this testimony,

16    plaintiff's claims against Quinn, Kollasch, and Dr. Kenney should be dismissed.

17        Defendants' argument with respect to Quinn and Kollasch is well taken.  It is apparent

18    from plaintiff's testimony that he improperly seeks to hold Quinn and Kollasch liable under a

19    theory of supervisory liability.  Such a claim may not stand and plaintiff's claims against these

20    defendants should, therefore, be dismissed.

21        It is less clear whether plaintiff's claims against Dr. Kenney should be dismissed on this

22    basis.  Although plaintiff was clearly confused during his deposition as to the respective identities

REPORT AND RECOMMENDATION
PAGE -7

01  of Dr. Kenney and Kollasch, it is apparent from defendant's own summary judgment filing that Dr.

02  Kenney played a direct role in plaintiff's treatment, or the alleged lack thereof.   Accordingly,

03  giving plaintiff the benefit of the doubt, the undersigned declines to recommend dismissal of

04  plaintiff's claims against Dr. Kenney based on a failure to allege personal participation.

05  B.   Eighth Amendment Claim

06       The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one

07  convicted of a crime. U.S. Const. amend. VIII.   To establish an Eighth Amendment violation, an

08  inmate must prove that prison officials were "deliberately indifferent" to a serious risk of harm to

09  his well-being.  *Wilson v. Seiter*, 501 U.S. 294, 302-04 (1991); *Estelle v. Gamble*, 429 U.S. 97,

10  104 (1976).   A prison official may be held liable "only if he knows that inmates face a substantial

11  risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

12  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).   An inmate must demonstrate that the risk of harm

13  was "objectively, 'sufficiently serious,'" and that the officials acted with a "'sufficiently culpable

14  state of mind.'"  *Id.* at 834 (cited sources omitted).   The latter subjective showing requires plaintiff

15  to prove (1) that an official was aware of facts from which he could have inferred that a substantial

16  risk of serious harm existed, and (2) that the official in fact drew the inference.    *See Wallis v.*

17  *Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995) (citing *Farmer*, 511 U.S. at 837).

18       With a claim of alleged medical mistreatment, an inmate must allege "acts or omissions

19  sufficiently harmful to evidence deliberate indifference to serious medical needs."    *Estelle*, 429

20  U.S. at 106.   Deliberate indifference may be found where prison officials "deny, delay or

21  intentionally interfere with medical treatment, or it may be shown by the way in which prison

22  physicians provide medical care."   *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.

REPORT AND RECOMMENDATION
PAGE -8

01  1988).  The indifference, however, must be substantial; inadequate treatment due to negligence,

02  inadvertence or differences in judgment between an inmate and medical personnel do not rise to

03  the level of a constitutional violation.  *See id.*; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

04  Prison officials may be free from liability if they "responded reasonably" to a known risk; a

05  dispute, in hindsight, over the existence of arguably superior alternatives does not raise a triable

06  issue of fact as to whether the defendants were deliberately indifferent.  *See Farmer*, 511 U.S. at

07  844; *Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986).

08        Defendants argue that plaintiff fails to satisfy either the objective or subjective components

09  of an Eighth Amendment claim.  The Court agrees with defendants for the reasons described

10  below.

11        Defendants provide support for the assertion that physical examination and x-rays of

12  plaintiff did not yield any objective signs of significant degenerative changes to plaintiff's back, and

13  that plaintiff's medical providers prescribed a variety of measures to treat an assessed muscle

14  spasm secondary to lack of physical activity, including physical therapy accompanied by narcotic

15  medication, non-narcotic pain relief medication, a hot water bottle, an extra blanket, and a muscle

16  relaxer.  (Dkt. 37, Exs. 2 & 4.)  Plaintiff also received treatment for an ankle injury and other

17  medical conditions.  (*Id.*)  A request for ongoing narcotic treatment was considered but rejected

18  as not indicated for long-term treatment of chronic pain.  (*Id.* and Ex. 3, Attach. D.)

19        Plaintiff does not show the necessity of some other course of treatment.  Although

20  contending that no x-rays had been taken at the time of his Amended Complaint, plaintiff fails to

21  contradict defendant's assertion that x-rays were, at some point, taken and revealed normal

22  findings.  (*Id.*, Ex. 4, ¶ 4.)  Also, while plaintiff finds the type of pain relief prescribed insufficient,

REPORT AND RECOMMENDATION
PAGE -9

01  he offers no more than a difference of opinion as to the proper course of treatment, which does

02  not give rise to a constitutional claim for deliberate indifference.  *Sanchez*, 891 F.2d at 242.

03      Moreover, even if plaintiff had shown an objectively, sufficiently serious risk of harm, he

04  fails to show defendants were aware of facts from which they could have inferred a substantial risk

05  existed and that they, in fact, drew such an inference.  *Wallis*, 70 F.3d at 1077.  The care provided

06  and the results of examinations and x-rays belies the contention that a reasonable person would

07  have inferred a substantial risk of harm.  Nor does plaintiff support a contention that defendants

08  actually inferred or knowingly disregarded such a risk.  Indeed, he did not respond to declarations

09  from defendants to the contrary.  (*See* Dkt. 37, Exs. 2 & 4.)

10      In sum, plaintiff fails to establish defendants were deliberately indifferent to a serious risk

11  of harm to his well-being.  As there is no basis for supporting plaintiff's Eighth Amendment claims,

12  these claims are subject to dismissal on summary judgment.[3]

13  C.  Injunctive Relief

14      Plaintiff requests both preliminary and permanent injunctive relief "ordering defendants to

15  cease retaliation and succum [sic] to rule of law[,]" and "[t]o for bid [sic] transferring plaintiff to

16  another prison where his mental illness cannot be addressed before treatment currently on going

17  [sic] can continue."  (Dkt. 18 at 5.)  The Court previously considered and rejected plaintiff's

18  request for preliminary injunctive relief.  (*See* Dkts. 30 & 33.)

19

20

21      [3] Because the Court finds plaintiff's claims subject to dismissal for the reasons stated

22  above, it declines to address an additional argument that defendants are entitled to qualified
   immunity.

REPORT AND RECOMMENDATION
PAGE -10

01        Plaintiff's request for permanent injunctive relief should likewise be denied.  Plaintiff

02   dropped his retaliation claim through the voluntary dismissal of his claims against former defendant

03   Craig McIntyre.  (*See* Dkt. 18 at 4, Dkt. 19, Exs. at 1, 3, and Dkt. 36.)  Plaintiff's transfer claim

04   is presumably tied to his Eighth Amendment claim, which fails for the reasons stated above.

05   Moreover, a convicted prisoner does not have a right to be housed at a particular facility in a state

06   prison system.  *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) ("The conviction has

07   sufficiently extinguished the defendant's liberty interest to empower the State to confine him in

08   *any* of its prisons."; "[T]he Due Process Clause in and of itself [does not] protect a duly convicted

09   prisoner against transfer from one institution to another within the state prison system.") (emphasis

10   in original). *But see Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("[P]rison officials [may

11   not] transfer an inmate to another prison in retaliation for the inmate's exercise of his First

12   Amendment right to pursue federal civil rights litigation.") In this case, plaintiff does not show,

13   or even allege, the existence of any significant threat of a transfer.  Instead, any such harm appears

14   to be purely speculative and, consequently, insufficient to warrant the relief requested.  Indeed,

15   plaintiff has not been transferred since the initiation of this lawsuit in May 2007.

16        Injunctive relief should be granted "'sparingly, and only in a clear and plain case.'" *Rizzo*

17   *v. Goode*, 423 U.S. 362, 378 (1976) (quoted case omitted).  Because there is no basis for

18   plaintiff's injunctive relief request, this request is also subject to summary dismissal.

19                                 <u>CONCLUSION</u>

20        For the reasons set forth above, the Court recommends that defendants' motion for

21   summary judgment be GRANTED and that plaintiff's claims against all named defendants be

22   / / /

REPORT AND RECOMMENDATION
PAGE -11

01  DISMISSED.  A proposed order accompanies this Report and Recommendation.

02       DATED this <u>4th</u> day of April, 2008.

03                                      _____
                                        Mary Alice Theiler
04                                      United States Magistrate Judge

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -12